WESTINGHOUSE ELECTRIC & MFG. CO. v. SAMSON IRON WORKS. *

(Circuit Court of Appeals, Ninth Circuit.   July 3, 1916.)

No. 2674.

1. SALES ⬤⟿340—ACTIONS—PURCHASE PRICE.
    To sue in indebitatus assumpsit is not to sue for the purchase price
of goods sold.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 927–942; Dec. Dig.
⬤⟿340.]

2. SALES ⬤⟿384(7)—ACTIONS FOR BREACH—PURCHASE PRICE.
    Defendant breached its contract to purchase machinery from plaintiff,
and thereafter plaintiff, the contract providing that title should not vest
in defendant until payment, disposed of part of the machinery to third
persons.  Plaintiff then sued in indebitatus assumpsit for damages.  Held,
that as title to the property had never passed to defendant, though part
of it was delivered, as a suit in indebitatus assumpsit is not one for the
purchase price, plaintiff cannot complain that under the instructions its
recovery was limited to damages resulting from defendant's breach.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. § 1107; Dec. Dig.
⬤⟿384(7).]

3. SALES ⬤⟿388—ACTIONS—INSTRUCTIONS.
    In an action for breach of contract to purchase machinery, part of
which was delivered and installed, instructions on plaintiff's measure of
damages are not objectionable, as precluding the jury from awarding
damages for expense of installation and removal of part of the machin-
ery, where the court elsewhere expressly instructed that, if the jury found
for plaintiff, they should allow such damages as expense of delivery,
installation, and removal.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. § 1108; Dec. Dig.
⬤⟿388.]

4. SALES ⬤⟿382—ACTIONS—EVIDENCE.
    In such case, where the machinery was to be installed by defendant
in a building, and defendant contended that because of plaintiff's delay
the owner repudiated his contract with it, evidence of a conversation be-
tween the owner and defendant's manager, wherein the contract was re-
pudiated, was admissible.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. § 1096; Dec. Dig.
⬤⟿382.]

5. EVIDENCE ⬤⟿155(10)—ADMISSIBILITY—EVIDENCE ADMISSIBLE BECAUSE OF
OTHER EVIDENCE.
    Where plaintiff's witness testified to statements by defendant's man-
ager, wherein he detailed a conversation with a third person, defendant
is entitled to prove the conversation with such third person.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 455; Dec. Dig.
⬤⟿155(10).]

In Error to the District Court of the United States for the Second
Division of the Northern District of California; Wm. C. Van Fleet,
Judge.

Action by the Westinghouse Electric & Manufacturing Company
against the Samson Iron Works.  There was a judgment for defend-
ant, and plaintiff brings error.  Affirmed.

The plaintiff in error and the defendant in error were respectively plain-
tiff and defendant in the court below, and they will be so designated here.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

*Rehearing denied October 9, 1916.

The defendant had undertaken to install in the Spalding Building at Portland, Or., then under construction, an electric power plant of three units, each unit to be composed of a generator and a gas engine. On May 25, 1910, the defendant entered into an agreement with the plaintiff whereby the latter agreed to deliver and erect on foundations in the basement of the building, three generators, the first generator to be shipped immediately from San Francisco, the other two to be built and sent from the plaintiff's factory at Pittsburg. The contract provided that the first generator with its gas engine was to be in operation by July 1, 1910, that payment in the amount of $1,500 should be made on the total contract price immediately upon the installation and acceptance of the first generator, or not later than July 15, 1910. As to the other generators it was agreed that delivery should be made from the factory in approximately 90 days from May 25, 1910, the date of receipt of order. The plaintiff in its complaint alleged that it was ready to comply with its contract as to the delivery and erection of the first generator, but that by reason of the fact that the building was not in readiness for the installation, and that the defendant failed to furnish proper appliances for operation, the plaintiff was prevented from furnishing, delivering and erecting said generator on or about July 1, 1910, but that as soon thereafter as the building was in readiness, and as soon as defendant complied with its contract as to appliances for operation, plaintiff furnished and delivered and erected said generator; that within approximately the 90 days stipulated in the contract the plaintiff was ready and able and willing to deliver the other two generators, and to comply with its contract as to the same; that the defendant failed and neglected and refused to pay the $1,500 agreed to be paid immediately upon installation and acceptance of the first unit, and still fails to pay the same; that on or about August 25, 1910, and before the time specified in the contract for the delivery of the second and third generators and apparatus, the defendant notified the plaintiff that it would not accept plaintiff's generator or any other part of plaintiff's machinery; and that the contract was void and of no effect. The plaintiff claimed damages in the sum of $3,100. The defendant answered denying its indebtedness to the plaintiff, or that the plaintiff had performed its contract, and alleging that the plaintiff failed and neglected to install the first unit by July 1, 1910, and neglected to deliver the other two generators within 90 days from the receipt of the order, or at all, and alleged that in consequence of the plaintiff's failure to keep and perform its contract, defendant was prevented from completing the installation of the electrical apparatus and appliances in the said building, according to its contract with the owner thereof, and was otherwise put to large cost and expense in attempting to perform said contract, and was thereby damaged in the sum of $7,693; that on September 6, 1910, the defendant notified the plaintiff that the owner of the building had by reason of plaintiff's failure to carry out its portion of the contract, rescinded his contract with the defendant, and that the defendant would hold the plaintiff liable for all loss and damage accruing therefrom, and that on September 12th the defendant rescinded its contract with the plaintiff. Upon the conclusion of the trial the jury returned a general verdict in favor of the defendant, and judgment was thereupon rendered for the defendant.

David L. Levy, Walter Shelton, and Campbell, Weaver, Shelton & Levy, all of San Francisco, Cal., for plaintiff in error.

Nathan H. Frank and Irving H. Frank, both of San Francisco Cal., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). **[1, 2]** The plaintiff relies principally upon alleged errors in the instructions of the court to the jury on the subject of the plaintiff's claim for damages. It was agreed in the contract between the plaintiff and the

defendant that no property in or title to any part of the apparatus furnished by the plaintiff, and no right to use the same, should pass to the defendant, but that all thereof should remain the personal property of the plaintiff until fully paid for, and that, on default of the defendant in making stipulated payments at the time specified, plaintiff should be. entitled to immediate possession of the apparatus and free to enter upon premises wherever the same might be located and remove its property. The court, referring to this provision of the contract, said to the jury:

"If, therefore, you find for the plaintiff, it will not be entitled to recover for the value of the apparatus installed by plaintiff, or any part thereof, since it remains its property, and there is no evidence that it has been lost or injured, but it will only be entitled to recover such damages as it has sustained in the endeavor to carry out the contract, such as the expense of delivery and installation thereof, and the necessary steps to have it returned to it."

As to the plaintiff's claim for damages in connection with the second and third generators, the court charged the jury that if they found that the two generators which were not shipped, but were subsequently sold by the plaintiff, were sold for as much as the plaintiff would have realized for them under the contract, the plaintiff could not be allowed anything for the failure of the defendant to accept them. The plaintiff, while excepting to these instructions, requested the court to instruct the jury that, if they found for the plaintiff, its damages should be the whole contract price, $7,850, deducting therefrom, first, the market value of the second and third generators at Portland, Or., in September, 1910; second, the value of the component parts of the switchboard at Portland, if the jury found that they had no value as a permanent switchboard, but only as dismantled articles; third, freight charges on the switchboard from Pittsburg to Portland, had it been shipped; fourth, cost of labor and material necessary to erect and install the second and third generators, permanent switchboard, and other apparatus.

To the alleged error in the instructions and refusal to instruct the plaintiff cites authorities to the proposition that if, notwithstanding the reservation of the title of goods in the vendor, he elects to sue the vendee for the purchase price thereof, he waives his claim of title to the goods, and the title passes to the defendant. That proposition is not applicable here, for the reason that the plaintiff did not and could not under the facts sue for the purchase price. It set forth in its complaint the provision of the contract whereby the title was to remain in the plaintiff, and it sued in the first count for damages in the sum of $3,100 for the alleged failure of the defendant to carry out its contract, and in the second count it sued upon indebitatus assumpsit for goods sold and delivered and labor and material furnished, of the reasonable value of $3,100. To sue upon an indebitatus assumpsit is not to sue for the purchase price. Barrere v. Somps, 113 Cal. 97, 45 Pac. 177, 572. By the contract there was a single sum agreed upon as the total purchase price for all the machinery included therein. Before the action was begun, the plaintiff had sold to others the second and third generators. The plaintiff was no long-

er in condition to waive its title to the property or to transfer the title to the defendant. It had elected to retain the title.

[3] Nor do we find that the instructions so given by the court were subject to the objection that the jury were thereby precluded from awarding the plaintiff damages for the expense of installation and removal of the first generator. The court elsewhere instructed the jury that, if they found for the plaintiff, it would be entitled to such damages as it sustained in its endeavor to carry out the contract, such as the expense of delivery and installation, and the necessary steps to have it returned, together with such profit as it would have realized on its sale, had the contract been fully executed.

The plaintiff contends that the evidence was insufficient to justify the verdict, and that it showed without conflict that the plaintiff performed the contract. There was no exception taken, and there is no assignment of error to present to this court any question of the evidence or the want of evidence. There was no request that the jury be instructed to return a verdict for the plaintiff, and the record suggests no error of law in any of the rulings of the trial court on the effect of the evidence. The trial court, in instructing the jury, said that the whole sum and substance of the case was, Who was responsible for the failure to have the contract carried out? and that as to that question the evidence was "more or less conflicting." With that statement we agree.

[4] The plaintiff contends that the court below erred in admitting testimony given by Head, the defendant's manager, as to a conversation between him and Spalding, the owner of the building. The defendant, in making out its case, relied upon the allegation that by the plaintiff's default it was prevented from carrying out its contract, and it alleged in its complaint that on September 6, 1910, it informed the plaintiff that Spalding had rescinded his contract with the defendant on account of the plaintiff's failure to perform its contract. Under the issues it was proper for Head to testify to the fact that Spalding gave notice that he canceled the contract. He testified that Spalding said:

"It is impossible to get power. I must have it. The only thing for me to do is to contract with the Electric Company. I will cancel your contract now, and you must take your things out."

It is impossible to see how the evidence could have prejudiced the plaintiff.

[5] Again, the admission of the evidence was not error for the reason that Wernicke, a witness for the plaintiff, had testified to a conversation with Head, in which Head had told him what Spalding had said to him on that occasion, and thereby the plaintiff had opened the way for the defendant to prove by Head what the conversation was. His version, however, did not differ materially from that of Wernicke.

We find no error. The judgment is affirmed.